## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**RUTH E. RICHARDS**
116 T Street, NE, Apt 126
Washington, D.C. 20002

        *Plaintiff*,

   v.

**METROPOLITAN POLICE
DEPARTMENT OFFICER
JENNIFER GELSOMINO**
Badge No. 4819
c/o Metropolitan Police Department
Fourth District Station
6001 Georgia Avenue, NW
Washington, D.C. 20011

        *Defendant*.

Civil Action No.

Jury Trial Demanded

## COMPLAINT

1.     Plaintiff Ruth Elizabeth Richards brings this action against Defendant District of Columbia Metropolitan Police Department (MPD) Officer Jennifer Gelsomino under 42 U.S.C. § 1983 seeking relief for violations of the Fourth Amendment's prohibition against unreasonable seizure and the Fifth Amendment's guarantee of equal protection of the laws.

2.     On May 29, 2013, Ms. Richards, a 56-year old American citizen born in Jamaica, was the victim of discrimination on the basis of her national origin and an unlawful arrest by MPD Officer Gelsomino.

3.     Upon her false arrest, Ms. Richards was detained for approximately nineteen (19) hours during which she was denied food, access to her prescribed medications, and the ability to report her arrest to her attorney or family.

4.     After being released, Ms. Richards filed a formal written complaint against

Officer Gelsomino with the Office of Police Complaints ("OPC") dated June 28, 2013. Exhibit 1.

5.      On October 20, 2015, after completing a full investigation, which included interviewing witnesses and collecting other evidence, the OPC, through an independent complaint examiner, issued a written decision finding that Officer Gelsomino improperly harassed and discriminated against Ms. Richards. Exhibit 2.

6.      The OPC's findings support Ms. Richards' constitutional claims that Officer Gelsomino subjected Ms. Richards to an unlawful arrest without probable cause and discrimination on the basis of her national origin and race.

7.      In particular, the OPC found in no uncertain terms that "[b]ased on the evidence, it does not appear that [Officer Gelsomino] had probable cause to believe that [Ms. Richards] has committed an offense 'that caused or was intended to cause reasonable fear of imminent serious physical injury or death.' D.C. Code § 16-1031(a)(2). Without probable cause to believe that [Ms. Richards] had committed such an act, [Officer Gelsomino] had no authority to make the arrest." Ex. 2 at 4.

8.      The OPC also found that "[Officer Gelsomino] discriminated against [Ms. Richards] through conduct that resulted in disparate treatment of [Ms. Richards] on the basis of her national origin" when Officer Gelsomino inquired into Ms. Richards' national origin for no lawful purpose before arresting her. Ex. 2 at 7-8.

## NATURE OF ACTION

9.      This is an action arising under the United States Constitution and 42 U.S.C. § 1983.

10.      Officer Gelsomino intentionally and maliciously seized Ms. Richards and discriminated against her based on her national origin and race.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343(a)(3).

12.     Venue is proper in this Court under 28 U.S.C. § 1391, because all or a substantial

part of the events and omissions giving rise to the claims asserted herein occurred in this judicial

district.

## PARTIES

13.     Plaintiff Ruth Elizabeth Richards ("Ms. Richards"), a 56-year old United States

citizen who was born in Jamaica, currently resides at 116 T Street NE, Apt 126, Washington

D.C. 20002. At all times relevant to this proceeding, Ms. Richards resided at 58 Hawthorne

Court NE, Washington, D.C. 20017.

14.     On information and belief, Defendant Officer Jennifer Gelsomino ("Defendant"),

whom Plaintiff sues in her individual capacity, is and was at all times relevant to this proceeding,

an officer of MPD, badge number 4819. Defendant at all times relevant herein acted under the

color of District of Columbia law, and, in whole or in part, in her capacities as an agent or

employee of MPD.

## FACTS

A.     **District of Columbia Metropolitan Police Department Officer Gelsomino's Unlawful
Arrest and Unlawful Discriminatory Treatment of Ms. Richards Following Assault
by Ex-Husband**

15.     Ms. Richards was born in Jamaica in 1960, and became a naturalized citizen of

the United States approximately 18 years ago.

16.     On Wednesday, May 29, 2013, Ms. Richards was walking to a friend's house.

While walking along Illinois Avenue NW, Ms. Richards saw her ex-husband, George Richards

("Mr. Richards")

17.     Mr. Richards pulled his car beside Ms. Richards and then got out with a passenger, Sharniesha Grady ("Ms. Grady") and her child.  Ms. Grady appeared to be more than thirty (30) years younger than Mr. Richards.

18.     Mr. Richards assaulted Ms. Richards in the face, and the two had a heated argument.

19.     On information and belief, a neighbor saw Mr. Richards assault Ms. Richards, but was unable to hear the verbal exchange.

20.     Ms. Richards has a Jamaican accent.

21.     Ms. Richards told Mr. Richards that she would call the police, and went inside the house of Eva Wood ("Ms. Wood"), Mr. Richards' mother.

22.     On information and belief, Mr. Richards, Ms. Grady, and her child left the intersection and went inside Ms. Grady's house, which is located next door to Ms. Wood's house.

23.     Ms. Richards and Ms. Wood were on the porch of Ms. Wood's home when the District of Columbia Metropolitan Police arrived in two squad cars.  Officer Gelsomino and another officer got out of the vehicles.

24.     According to the OPC: "[s]everal calls to 911 were placed from [Ms. Grady's] home. When [Ms. Grady] called 911, she asked for the police to come and stated that it was not an emergency." Ex. 2 at 2.

25.     Officer Gelsomino and another officer responded to the radio runs and arrived on the scene shortly after the incident.

26.     The other officer spoke with Ms. Richards who explained what had happened.

Ms. Wood also told this officer about other times Mr. Richards had behaved violently, including an incident a few days earlier in which she had called the police when Mr. Richards threatened Ms. Wood.

27.   Officer Gelsomino first spoke with Mr. Richards and Ms. Grady.

28.   Officer Gelsomino then approached Ms. Richards in front of Ms. Wood's home. She asked Ms. Richards to step off the porch. When she did so, Officer Gelsomino, a Caucasian female, immediately asked Ms. Richards, a Black female, "Where were you born?" Ms. Richards responded, "I am an American citizen." When Officer Gelsomino asked again, "Where were you born?" Ms. Richards told Officer Gelsomino that she was born in Jamaica. Officer Gelsomino did not ask Ms. Richards any other questions at that time.

29.   Instead, Officer Gelsomino put Ms. Richards in handcuffs, placed her under arrest, and failed to read Ms. Richards her Miranda rights. And she did so without even asking Ms. Richards about the assault that happened five (5) minutes before the officers arrived.

30.   In response, Ms. Wood asked why Officer Gelsomino was arresting Ms. Richards. Ms. Richards asked the same question.  Ms. Richards pointed out that it was Mr. Richards that had assaulted her.  Officer Gelsomino did not provide a reason for her arrest.

31.   Officer Gelsomino asked if anyone had witnessed the assault.  Ms. Richards told her that there were in fact eye witnesses to the assault, including individuals two houses down the street.  Unfortunately, Officer Gelsomino said, "I'm not going down there," and refused to identify let alone interview the eye witnesses.

32.   However, as Officer Gelsomino was leading Ms. Richards to the police car, a woman ran up to say that she had witnessed the altercation and that it was Mr. Richards who had assaulted Ms. Richards. After speaking with this witness, the officers arrested Mr. Richards as

well. Mr. Richards and Ms. Richards were placed in separate squad cars but were taken to the same location, the Fourth District office.

33.     At the Fourth District office, Ms. Richards was placed into a cell by herself.  She asked several times for permission to call her son, who would be extremely concerned about her whereabouts.  She also requested access to her lawyer.  She was refused both requests.

34.     When Ms. Richards told the officers that she needed her prescription medications, she was told that they would need to hold her for an additional day if she required medical care. Frightened, Ms. Richards did not mention it again.

35.     Early the next morning, Ms. Richards was driven to the courthouse, fingerprinted, and placed in a cell alone. At approximately 7:00 am, she was moved to an area containing multiple other women and told she would remain there until brought before a judge. Her ankles were chained to other women's ankles.

36.     At approximately 5:00 pm, Ms. Richards was released from the courthouse without ever having seen a judge and without ever having been told what alleged charges she had been arrested for.

37.     At no time during her confinement was Ms. Richards offered any food.

**B.     The District of Columbia Office of Police Complaints Confirms In Written Report After Full Factual Investigation That Officer Gelsomino Falsely Arrested and Unlawfully Discriminated Against Ms. Richards Following Assault by Ex-Husband**

38.     On June 28, 2013, Ms. Richards filed a formal complaint with the Office of Police Complaints ("OPC"). Ex. 1. The OPC has authority to adjudicate citizen complaints against members of the MPD that allege abuse or misuse of police powers by such members.

39.     On June 15, 2015, the OPC notified Ms. Richards that the OPC had completed an investigation and "[b]ased on the findings of the investigation, which included interviewing

witnesses and collecting other evidence, [the OPC] have concluded that police misconduct may have occurred in this case." Exhibit 3. As such, the complaint and OPC's report of investigation were referred to an independent complaint examiner who issued a written decision on the merits.

40.     On November 13, 2015, the OPC informed Ms. Richards that it had sustained harassment and discrimination allegations against Officer Gelsomino in a decision on October 20, 2015. Ex. 2.

41.     The Complaint Examiner also determined that the OPC's Report of Investigation presented no genuine issues of material fact in dispute that required an evidentiary hearing. Ex. 2 at 1.

42.     With respect to the unlawful arrest, the OPC finds that: "[b]ased on the evidence, it does not appear that [Officer Gelsomino] had probable cause to believe that [Ms. Richards] has committed an offense 'that caused or was intended to cause reasonable fear of imminent serious physical injury or death.'" Ex. 2 at 4. The OPC also found that "[b]ased on the words themselves as reported by [Officer Gelsomino] and upon the circumstantial evidence that illustrates [Ms. Grady] herself was not particularly concerned about the words that had been uttered, [Officer Gelsomino's] assessment of having probable cause to arrest for an intrafamily offense involving a threat is not reasonable." Ex. 2 at 5.

43.     In addition, the OPC finds "[n]or does it appear that [Officer Gelsomino] took the procedural steps necessary to determine that she had probable cause to believe that this intrafamily offense occurred, as required to make a warrantless arrest..." Ex. 2 at 5. "In the instant case, [Officer Gelsomino] appears to have spoken only to [Ms. Grady] and [Mr. Richards] prior to making the arrest of [Ms. Richards]...[Officer Gelsomino] spoke first with [Ms. Grady] and [Mr. Richards], then she approached [Ms. Richards] and immediately inquired

about her national origin. After that inquiry, she handcuffed [Ms. Richards]...the officer did not

ask [Ms. Richards] about the underlying threats allegations." Ex. 2 at 5.

44.     The OPC concludes that "the evidence shows that [Officer Gelsomino] subjected

[Ms. Richards] to harassment when she arrested her on May 29, 2013 because she did not follow

applicable procedures, guidelines, and statutory mandates in effectuating a warrantless arrest

under these circumstances." Ex. 2 at 6.

45.     The OPC also confirmed that Officer Gelsomino discriminated against Ms.

Richards. The OPC finds that "[Officer Gelsomino] discriminated against [Ms. Richards]

through conduct that resulted in disparate treatment of [Ms. Richards] on the basis of her national

origin. Though there is no evidence that [Officer Gelsomino's] arrest of [Ms. Richards] was

related in any way to her questions about [Ms. Richards'] national origin, the questions

themselves, which had no lawful purpose, created an environment in which [Ms. Richards] felt

singled out and challenged solely on the basis of her national origin." Ex. 2 at 7.

46.     The OPC concludes that "the undisputed evidence shows that [Officer

Gelsomino] violated MPD guidelines and municipal regulations when she inquired into [Ms.

Richards'] national origin just prior to arresting her. As such, [Ms. Richards'] allegation of

discrimination against [Officer Gelsomino] is sustained." Ex. 2 at 8.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Fourth Amendment – 42 U.S.C. § 1983
### (False Arrest)

47.     The preceding paragraphs 1-46 are incorporated herein by reference.

48.     At all times relevant hereto, Plaintiff Ms. Richards had a right to be free from

unreasonable seizures under the Fourth Amendment to the United States Constitution. This right

encompasses the right to be free from an arrest by the police without probable cause.

49.     By arresting Ms. Richards, Defendant Officer Gelsomino made an arrest in violation of Ms. Richards' rights because the arrest was carried out without probable cause.

50.     It would not have been reasonable for the officer, based on the facts known to her at the time, to believe she had probable cause to arrest Ms. Richards for an intrafamily offense involving a threat.

51.     D.C. Code § 16-1031 sets forth that an officer must make an arrest if she "has probable cause to believe that the person...(2) [c]ommitted an intrafamily offense that caused or was intended to cause reasonable fear of imminent serious physical injury or death." D.C. Code 16-1031(a)(2).

52.     In this case, the OPC confirmed that "[b]ased on the evidence, it does not appear that [Officer Gelsomino] had probable cause to believe that [Ms. Richards] has committed an offense 'that caused or was intended to cause reasonable fear of imminent serious physical injury or death.'" Ex. 2 at 4.

53.     The OPC finds that "based on the evidence presented [the words as reported by Officer Gelsomino] do not rise to the level of a threat that 'caused or was intended to cause reasonable fear of imminent serious bodily injury or death.'" Ex. 2 at 5.

54.     The OPC also finds that "the circumstantial evidence [] illustrates [Ms. Grady] herself was not particularly concerned about the words that had been uttered, [such that] [Officer Gelsomino's] assessment of having probable cause to arrest for an intrafamily offense involving a threat is *not reasonable*." Ex. 2 at 5 (emphasis added). The OPC explains that Ms. Grady was "quite calm" on the 911 recording in asking how the officer was and in saying that it was not an emergency. *Id.*

55.     The OPC concludes that "[w]ithout probable cause to believe that [Ms. Richards] had committed such an act, [Officer Gelsomino] had no authority to make the arrest." Ex. 2 at 4.

56.     The Defendant Officer's above-described acts, which were performed while acting under the color of District of Columbia law, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution. The Defendant Officer is liable to Plaintiff under 42 U.S.C. § 1983.

57.     Qualified immunity is also not appropriate here to shield Officer Gelsomino from liability.

58.     First, Ms. Richards' constitutional right is clearly established. "It is well settled that an arrest without probable cause violates the [F]ourth [A]mendment." *Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987).

59.     Second, viewing the evidence in the light most favorable to Ms. Richards, the party claiming to have been injured, shows that Officer Gelsomino's conduct violated her constitutional right. As shown, after a full investigation, the OPC confirmed that probable cause did not exist to arrest Ms. Richards for an alleged intrafamily offense involving a threat.

60.     As a direct result of Officer Gelsomino's violation, Ms. Richards has suffered, and is entitled to recover, money damages including compensatory and punitive damages in an amount to be determined at trial.

### COUNT II
### Violation of the Fifth Amendment – 42 U.S.C. § 1983
### (Discrimination Based on National Origin and Race)

61.     The preceding paragraphs 1-60 are incorporated herein by reference.

62.     At all times relevant hereto, Plaintiff Ms. Richards had a right clearly established under the Fifth Amendment to the United States Constitution to be given equal protection under

the laws. The Fourteenth Amendment, whose equal protection principles are embodied in and

apply to the District of Columbia through the Fifth Amendment's due process clause, states that

"[n]o state shall...deny to any person within its jurisdiction the equal protection of the laws."

This right includes the right to be free from discrimination on the basis of her national origin and

race.

63.     Ms. Richards was intentionally singled out by Officer Gelsomino from others

similarly situated on the basis of her race and national origin.

64.     Defendant Gelsomino acted with discriminatory intent and was motivated by

considerations of race and national origin.

65.     The OPC finds that "[a]ll witnesses present during the interaction between

[Officer Gelsomino] corroborate that she questioned [Ms. Richards] in some way about her

national origin until she received a response...[Officer Gelsomino] asked her two times where

she was born...[and] these were the first two questions [Officer Gelsomino] asked her" just prior

to arresting her. Ex. 2 at 7.

66.     The OPC also finds that the other officer who responded to the scene suggested

that Officer Gelsomino could have inquired about her place of birth because it is a required field

on a PD Form 256 Quick Booking Form. Ex. 2 at 7-8. However, the OPC finds that "WITNESS

OFFICER #1'S theory cannot hold in this instance to explain a lawful reason for the inquiry.

Based on the investigation, no PD Form 256 was completed for this arrest." *Id*.

67.     Finally, "[f]urther evidence that [Officer Gelsomino] did not inquire about [Ms.

Richards's] place of birth for a lawful purpose appears on the PD Form 163 that [Officer

Gelsomino] completed for [Ms. Richards's] arrest. On that form, she failed to fill in the section

entitled 'place of birth.' Had the information been relevant to her for administrative reasons, it

follows that she would have completed the section soliciting it." *Id.*

68.     The OPC concludes that "[i]n this case, [Officer Gelsomino] discriminated against [Ms. Richards] through conduct that resulted in disparate treatment of [Ms. Richards] on the basis of her national origin...the questions themselves, which had no lawful purpose, created an environment in which [Ms. Richards] felt singled out and challenged solely on the basis of her national origin." *Id.*

69.     The Defendant Officer's above-described acts, which were performed while acting under the color of District of Columbia law, violated Plaintiff's rights under the Fifth Amendment to the United States Constitution. The Defendant Officer is liable to Plaintiff under 42 U.S.C. § 1983.

70.     Qualified immunity is not appropriate here to shield Officer Gelsomino from liability.

71.     First, Ms. Richards' constitutional right to be free from discrimination on the basis of her national origin and race is clearly established.

72.     Second, viewing the evidence in the light most favorable to Ms. Richards, the party claiming to have been injured, shows that Officer Gelsomino's conduct violated Ms. Richards' constitutional right. After a full investigation, the OPC confirmed that Officer Gelsomino discriminated against Ms. Richards on the basis of her nationality when the officer demanded that she identify her national origin.

73.     As a direct result of Officer Gelsomino's violation, Ms. Richards has suffered, and is entitled to recover, money damages including compensatory and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ruth E. Richards prays for judgment as follows:

a)      An award of compensatory damages in an amount to be determined that would fully compensate Ms. Richards for her injuries caused by the conduct of Defendant Officer Gelsomino alleged herein, including but not limited to emotional distress, pain and suffering, anxiety, anguish, feeling of unjust treatment, and fear;

b)      An award of punitive damages in an amount to be determined that would punish Defendant Officer Gelsomino for the willful, wanton, and reckless conduct alleged herein and that would effectively deter Defendant Officer Gelsomino and others similarly situated from engaging in similar conduct in the future;

c)      An award of Ms. Richards' costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. §§ 1983 and 1988;

d)      Appropriate injunctive relief; and,

e)      An order granting such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues in this case.

Dated: May 27, 2016

Respectfully submitted,


 /s/ W. Brad Nes
W. Brad Nes (D.C. Bar #975502)
Teri J. Diaz (D.C. Bar #1030535)
(*application forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: +1.202.739.5779
Facsimile:  +1.202.739.3001
Email: brad.nes@morganlewis.com
Email: teri.diaz@morganlewis.com


/s/ Dennis A. Corkery
Dennis A. Corkery (D.C. Bar #1016991)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
AND URBAN AFFAIRS
11 Dupont Circle, Suite 400
Washington, D.C. 20036
Phone: (202) 319-1000
Email: dennis_corkery@washlaw.org

*Counsel for Plaintiff Ruth E. Richards*