UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RUTH E. RICHARDS,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**METROPOLITAN POLICE DEPARTMENT OFFICER JENNIFER GELSOMINO,**<br><br>      **Defendant.** | Civil Action No. 16-1002 (JDB) |

## **MEMORANDUM OPINION & ORDER**

In this action brought pursuant to 42 U.S.C. § 1983, plaintiff Ruth Richards alleges that she was arrested by Metropolitan Police Department Officer Jennifer Gelsomino without probable cause and because of her race and national origin, in violation of the Fourth and Fifth Amendments. Gelsomino has moved to dismiss, arguing that she is entitled to qualified immunity from Richards' Fourth Amendment claim and that Richards' complaint fails to state a claim under the Fifth Amendment. For the reasons explained below, the Court disagrees. Gelsomino's motion to dismiss will therefore be denied.

## **BACKGROUND**

The following account is taken from Ms. Richards' complaint. Ms. Richards is a 56-year old United States citizen. She is black, was born in Jamaica, and speaks with a Jamaican accent. Compl. [ECF No. 1] ¶¶ 13, 20. In May 2013, she was walking to a friend's house when she saw her ex-husband, George Richards, driving down the street. Id. ¶ 16. Mr. Richards pulled his car alongside Ms. Richards and got out. Id. ¶ 17. So did a passenger, Sharniesha Grady, and Ms. Grady's child. Id. Ms. Richards thought that Ms. Grady appeared to be more than 30 years

younger than Mr. Richards. Id. According to the complaint, Mr. Richards then "assaulted Ms. Richards in the face, and the two had a heated argument." Id. ¶ 18. A neighbor witnessed the assault, but was unable to hear the argument. Id. ¶ 19. After telling Mr. Richards that she would call the police, Ms. Richards left the intersection where the alleged assault occurred and entered the house of Eva Wood, who is Mr. Richards' mother. Id. ¶ 21. Mr. Richards, Ms. Grady, and Ms. Grady's child entered Grady's house, which is next door to Ms. Wood's. Id. ¶ 22. From her home, Ms. Grady placed a number of calls to 911. Id. ¶ 24. Officer Gelsomino and another officer soon arrived in separate police cars. Id. ¶ 23. Gelsomino exited her car and went to speak with Mr. Richards and Ms. Grady. Id. ¶¶ 23, 27. The other officer spoke with Ms. Richards and Ms. Wood, who informed the officer about the alleged assault and other occasions on which Mr. Richards had allegedly behaved violently. Id. ¶ 26.

The situation escalated, however, as Gelsomino approached the porch where Ms. Richards and Ms. Woods were sitting. Requesting that Ms. Richards step off the porch, Gelsomino asked her: "Where were you born?" Id. ¶ 28. Ms. Richards responded "I am an American citizen." Id. Unsatisfied with Ms. Richards' answer, Gelsomino repeated her question. Id. When Ms. Richards responded that she was born in Jamaica, Gelsomino placed her in handcuffs and under arrest without asking any further questions. Id. ¶ 29. Both Ms. Richards and Ms. Wood asked why Ms. Richards was being arrested; Ms. Richards pointed out that she had been the victim of an assault by her ex-husband. Id. ¶ 30. But Gelsomino still provided no explanation for the arrest. Id. Instead, she asked whether there were any witnesses to the alleged assault. Id. ¶ 31. Told that there were, just two houses down the street, Gelsomino refused to seek them out, saying "I'm not going down there." Id. ¶ 32. As Gelsomino was leading Ms. Richards to the police car, however, one such witness came to the scene. Id. ¶ 32. This witness indicated that she had seen the

altercation and that Ms. Richards had indeed been assaulted by her ex-husband. Id. In light of this new information, the officers placed Mr. Richards under arrest as well but did not release Ms. Richards. Id. Ms. Richards was held at the police station for 19 hours, without being offered food, provided with her prescription medications, or allowed to report her arrest to her attorney or family. See id. ¶¶ 3, 33–37. She was ultimately released—without being charged or told why she had been arrested in the first place. Id. ¶ 36.

After being released, Ms. Richards filed a formal complaint with the Office of Police Complaints (OPC). Id. ¶ 38. The OPC process culminated with a written decision by an independent complaint examiner, who found in favor of Ms. Richards on her harassment and discrimination allegations. See id. ¶¶ 39–40. Specifically, the examiner concluded that Gelsomino lacked probable cause to believe that Ms. Richards had committed an intra-family offense involving a threat, see id. ¶ 42; see also D.C. Code § 16-1031(a)(2); that Gelsomino failed to take the procedural steps necessary to support a warrantless arrest, see id. ¶ 43; and that Gelsomino discriminated against Ms. Richards based on her national origin, see id. ¶ 45. Ms. Richards quotes these conclusions in her complaint in this case.

That complaint alleges that Gelsomino, while acting under color of state law, violated the Fourth and Fifth Amendments by arresting Ms. Richards without probable cause and because of her race and national origin. See 42 U.S.C. § 1983; Compl. ¶¶ 56, 69. Richards (hereinafter referring to Ms. Richards, unless otherwise specified) has also attached the examiner's full merits decision to her complaint. See OPC Merits Determination [ECF No. 1-4]. The examiner's decision, however, includes some factual information that Richards' complaint does not. For example, the examiner found that Grady had reported to the 911 operator that Richards "was talking loudly and making threats in front of her neighbors." Id. at 2. The examiner also noted

Grady's allegation that, in connection with the altercation at the center of this case, Richards had "approached [Grady] in front of her home aggressively and said 'Bitch, I'll smack you.'" Id. According to the examiner, Gelsomino included this statement in the arrest report. Id.

Gelsomino now moves to dismiss. See Def.'s Mot. to Dismiss [ECF No. 14]. Relying on Grady's allegations as summarized in the examiner's decision, Gelsomino argues that she is entitled to qualified immunity from Richards' Fourth Amendment claim because the arrest was supported by probable cause. She also argues that Richards' complaint fails to state a claim under the Fifth Amendment.

## LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must presume the truth of a complaint's factual allegations, although it is "not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The court then asks whether the facts alleged suffice "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). On a motion to dismiss, the court may generally consider "facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." Mpoy v. Rhee, 758 F.3d 285, 291 n.1 (D.C. Cir. 2014) (internal quotation marks omitted).

## ANALYSIS

The first task in this case is to identify the set of factual allegations that must be taken as true for purposes of Gelsomino's motion to dismiss. Gelsomino argues that, by attaching the examiner's decision to her complaint, Richards has incorporated all of its factual content into her complaint, thus allowing the Court to accept all that as true. See Def.'s Reply [ECF No. 17] at 1–

2. As a result, Gelsomino argues, the Court should consider Grady's account—that Richards "was talking loudly and making threats," including a threat to "smack" Grady—as it is set out in the examiner's decision. Richards, of course, disagrees. She asks the Court to disregard these alleged statements for present purposes, because she has "never asserted or accepted" them as true. Pl.'s Opp'n [ECF No. 16] at 9.

Federal Rule of Civil Procedure 10(c) permits a plaintiff to attach an exhibit to her complaint, thus making the exhibit "a part of the pleading for all purposes." But, as the D.C. Circuit has recently observed, the "incorporation by reference doctrine has limits." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015). Indeed, several circuits "have rejected the 'fantastic argument' that 'all facts contained in any attachments to a complaint are automatically deemed facts alleged as part of the complaint.'" Id. (quoting Carroll v. Yates, 362 F.3d 984, 986 (7th Cir. 2004)). "Rule 10(c) 'does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact.'" Id. (quoting N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454–56 (7th Cir. 1998)). When considering what facts to accept as true, therefore, "it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents." Id. at 412–13 (internal quotation marks omitted); accord Goines v. Valley Comm. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016).

Richards' complaint walks a fine line when using the examiner's decision. On the one hand, she plainly wants to make the Court aware of the examiner's conclusions, which she believes "support" her constitutional claims. Compl. ¶ 6. She also wants the Court to know that the examiner reached her conclusions after a "full investigation" of the facts, including conducting interviews and gathering evidence. Id. ¶ 5; see also id. ¶¶ 39, 59, 72. But that does not mean that

5

Richards has implicitly adopted all of the decision's factual content into her complaint. Richards' view of the arrest, and her related allegations, are the foundation of her complaint—"no portion of any of [her] claims is dependent upon the truth of any statements contained in" the examiner's decision. Goines, 822 F.3d at 168. Richards comes closest to relying on the decision's factual content when she quotes sections referring to Grady's account of the incident, including the alleged threats that Gelsomino now seeks to rely on in support of a finding of probable cause. See, e.g., Compl. ¶ 54 ("The OPC also finds that 'the circumstantial evidence illustrates Ms. Grady herself was not particularly concerned about <u>the words that had been uttered</u>, such that Officer Gelsomino's assessment of having probable cause to arrest for an intrafamily offense involving a threat is <u>not reasonable</u>.'" (brackets omitted) (first emphasis added)); id. ("The OPC explains that Ms. Grady was 'quite calm' <u>on the 911 recording</u> in asking how the officer was and in saying that it was not an emergency." (emphasis added)).

But in the Court's view, Richards' complaint stops well short of incorporating the statements in the examiner's decision themselves. These paragraphs of Richards' complaint are best read as a "preemptive acknowledgement of the defense" case—i.e., Richards is noting that, even if she did threaten to "smack" Grady, and even if Grady did report that threat to the 911 dispatcher and to Gelsomino, the examiner <u>still</u> concluded that Richards' arrest was discriminatory and unsupported by probable cause. See Goines, 822 F.3d at 169–70. This "may be unusual as a matter of pleading style," but it does not "support a Rule 12(b)(6) dismissal in the face of disputed facts." Id. at 170. And here, the relevant facts are indeed disputed. Richards claims that she never threatened to "smack" Grady at all. Pl.'s Opp'n at 12. Grady's contrary allegation—apparently conveyed to the 911 dispatcher and to Gelsomino, who apparently also included it in her arrest report—is the foundation of Gelsomino's motion to dismiss. See OPC Merits Determination at 2.

The examiner's decision, which was reached without the benefit of a statement from Gelsomino herself, is the Court's only window into these conversations. Id. at 4. The 911 call and the arrest report are not a part of the record. Thus, the Court has little ability to resolve this factual dispute, and a motion to dismiss is not the proper vehicle for doing so in any event (indeed, ultimately it may not even be the Court's role to do so). In the analysis below, the Court will accept as true the allegations in Richards' complaint and give her "the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks omitted). Here, that means rejecting Gelsomino's invitation to rely on factual information contained in the examiner's decision but not also incorporated into Richards' complaint.

As a defense to Richards' Fourth Amendment claim, Gelsomino invokes qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, 134 S. Ct. 3, 5 (2013) (per curiam) (internal quotation marks omitted). For a constitutional right to be clearly established, existing precedent must have placed the constitutional question "beyond debate," White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted), such that "any reasonable official in the defendant's shoes would have understood that [she] was violating it," Lash v. Lemke, 786 F.3d 1, 5 (D.C. Cir. 2015) (quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014)). "[C]learly established law should not be defined at a high level of

generality." White, 137 S. Ct. at 552 (internal quotation marks omitted). Instead, a court should focus on the issue "'in light of the specific context of the case.'" Lash, 786 F.3d at 6 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Here, Richards claims that Gelsomino violated the Fourth Amendment by arresting her without a warrant or probable cause. To comport with the Fourth Amendment, a warrantless arrest outside the home "must be predicated on particularized probable cause." Barham v. Ramsey, 434 F.3d 565, 573 (D.C. Cir. 2006). "In determining whether probable cause exists, courts examine 'the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" Garay v. Liriano, 943 F. Supp. 2d 1, 18 (D.D.C. 2013) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). "Probable cause exists where the arresting officer possesses information 'sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense.'" United States v. Catlett, 97 F.3d 565, 573 (D.C. Cir. 1996) (alterations omitted) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

Richards has adequately alleged a violation of the Fourth Amendment. Taking the allegations of her complaint as true, Gelsomino did not see the altercation between Mr. and Ms. Richards. Arriving at the scene after the fact and in response to a 911 call, she spoke first with Mr. Richards and Ms. Grady. The complaint contains few allegations shedding light on the content of the 911 call or Gelsomino's conversation with Mr. Richards and Ms. Grady. For the reasons stated above, moreover, the Court will not consider any factual information contained in the examiner's decision but not adopted in Richards' complaint. Nor, at the motion to dismiss stage, will it draw inferences favorable to Gelsomino, the defendant, about what the content of those conversations may have been. Proceeding, thus far, without any reason to believe that Richards had committed a crime, Gelsomino approached her. She asked only one question, "Where were

you born?" When Richards replied that she was born in Jamaica, Gelsomino arrested her. But being born in Jamaica is not a crime. According to the complaint, Gelsomino asked no other questions and performed no additional investigation that would illicit information regarding possible criminal activity by Richards. Because the warrantless arrest, as alleged, was founded on a total absence of inculpatory information, it violated the Fourth Amendment. And, as alleged, such a baseless arrest raises the specter of plain incompetence or of a knowing violation of the law. See Stanton, 134 S. Ct. at 5.

Gelsomino does not separately argue that the constitutional right invoked by Richards was not "clearly established." Richards, for her part, notes that it "is well settled that an arrest without probable cause violates the fourth amendment." Martin v. Malhoyt, 830 F.2d 237, 262 (D.C. Cir. 1987) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)); see also Compl. ¶ 58. Limited at this early stage to the allegations in Richards' complaint, that may indeed be as precise a framing of the constitutional right as is possible. Cf. Pearson, 555 U.S. at 238–39 ("When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify."). On the facts as currently alleged, then, Gelsomino is not entitled to qualified immunity because she violated a clearly established constitutional right when she arrested Richards without a warrant or probable cause. That being said, the Court remains cognizant of the Supreme Court's instruction to define the relevant right within the "particularized" facts of the case. See White, 137 S. Ct. at 552 (internal quotation marks omitted). Should Gelsomino revive her qualified immunity defense at the summary judgment stage, after further factual development, she will be entitled to a more contextualized assessment of the constitutional right at issue.

Richards has also adequately alleged a violation of the Fifth Amendment right to equal protection of the law. The equal protection component of the Fifth Amendment "prohibits

selective enforcement of the law based on considerations such as race" or national origin. Whren v. United States, 517 U.S. 806, 813 (1996). "Where the claim is invidious discrimination" in violation of the Fifth Amendment, plaintiff must allege that "the defendant acted with discriminatory purpose." Iqbal, 556 U.S. at 676; see also Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009); Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 69 (D.D.C. 2005). In other words, plaintiff must plausibly allege that the defendant took the challenged action "because of, not merely in spite of," her race or national origin. Iqbal, 556 U.S. at 677–78 (internal quotation marks omitted).

Here, Richards has alleged facts that, when accepted as true, are sufficient to give rise to a plausible inference of purposeful discrimination. According to the complaint, Gelsomino asked only one question when approaching Richards. The question was about Richards' national origin. She did not ask Richards about the incident described in the complaint, and she showed little interest in talking with individuals who had witnessed it. When asked by Richards and Wood to provide a reason for the arrest, Gelsomino declined. Viewed collectively, Gelsomino's alleged interest in Richards' national origin, her alleged disinterest in the details of the altercation, and her refusal to provide an explanation for Richards' arrest give rise to a plausible inference that Gelsomino acted on the basis of race or national origin.

Gelsomino does not appear to raise a qualified immunity defense to Richards' Fifth Amendment claim. Perhaps she believes that to be unnecessary, in light of her argument that the arrest was supported by probable cause. But if so, she is mistaken. Even an arrest supported by probable cause can violate the Fifth Amendment's guarantee to equal protection. See Whren, 517 U.S. at 813. In any event, the right that Richards seeks to vindicate is clearly established. See, e.g., Elliot-Park v. Manglona, 592 F.3d 1003, 1008 (9th Cir. 2010) ("It hardly passes the straight-

face test to argue at this point in our history that police could reasonably believe they could treat individuals disparately based on their race.").

## CONCLUSION

Based on the consideration of the parties' memoranda, the applicable law, and the entire record herein, and for the reasons explained above, it is hereby **ORDERED** that [14] defendant's motion to dismiss is **DENIED**. A separate Order setting an Initial Scheduling Conference will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 3, 2017